This was an action of debt in the name of the State for the use of Tharp, Lofland and Griffith, the plaintiffs, on the official recognizance of Emerson, the defendant, as sheriff of the county, and his sureties, and came up on a case stated and the question of law reserved for a hearing before the court. The plaintiffs were sureties in the official bond of Joshua C. Cranor, collector of taxes in Milford hundred, who had become insolvent and against whom judgment had been entered in the Superior Court at the suit of the State upon his official bond, on the 15th day of March 1860, at the instance of the county treasurer, for the county road and poor taxes levied in Milford hundred for the year 1859, and also severally against his said sureties, and on which execution had been issued against Cranor to October Term 1860 and returned levied on goods and chattels, and advertised and no sale for want of bidders, and upon which avenditioni exponas was issued November 16th, 1860, to April Term 1861 and returned goods sold December 20, 1860, for $566.24, and the money applied as follows: $399.15 to Moses Harrington, $99.50 to John Stewart and $67.59 to *Page 86 
this execution and not sufficient to pay it, the amount to be collected on it being $1145.63; execution was also issued on it October 9, 1860 to October Term 1860, at the instance of the treasurer of the poor of the county, for taxes levied in Milford hundred for the year 1859, collected by him, which was returned levied on goods and chattels and unsold for. want of time, and on which a venditioni exponas was also issued November 16, 1860, to April term 1861, to collect the said tax amounting to $222.13, and which was returned goods and chattels advertised and sold December 20, 1860 for $566.24 and applied as has been herein before stated; and that on the 29th day of October 1861, the said judgment and executions were transferred to the use of the said William Tharp, James R. Lofland and Daniel L. Griffith to the amount of six hundred dollars, they having paid the same as sureties. That previous to the entry of the said judgment at the suit of the State against Cranor on his official bond as collector as aforesaid, a judgment had been entered in the said Superior Court on the 4th day of February 1858, for the real debt of $427.56 with interest from the 29th day of January 1858, at the suit of William Neal v. Joshua C. Cranor; and also a judgment in the said court entered on the 7th day of March 1860, for the real debt of $300, with interest from March 7th, 1853 and credited thereon up to March 7th, 1859, at the suit of Rhoda Hill v. Joshua C. Cranor and Joseph S. Truitt; and that on the said judgment at the suit of the said William Neal v. Joshua C. Cranor, a writ of fieri facias was issued to April Term 1861, and duly returned nulla bona and levied on land, and on the 18th day of May 1861, a rule of inquiry was issued and returned not sufficient,c., and afterward a writ of venditioni exponas was issued June 10, 1861, to October Term 1861, and which was returned land sold July 3, 1861, to William Tharp, for $185.7.00, and that the said Pennell Emerson, Sheriff, to whom the said writs were directed and by whom the said premises were sold applied the proceeds as follows: $79.30 to a judgment of Moses Harrington entered August 6th, 1855 *Page 87 
and sufficient, $552.65 to the writ of Neal and sufficient, $10 to costs on judgment of Levin Thompson entered August 26th, 1858 and sufficient, $354.32 to the judgment of Rhoda Hill v. Joshua C. Cranor and Joseph S. Truitt entered March 7th, 1860 and sufficient, $847.24 to the judgment of the State of Delaware v. Joshua C. Cranor above mentioned and not sufficient, and the residue $12.99 retained as his commissions. It was agreed by counsel that if upon the foregoing facts the said sum of $354.32 so applied to the judgment of the said Rhoda Hill ought to have been applied to the said judgment of the State of Delaware v. Joshua C. Cranor, then judgment should be entered in the present suit in favor of the plaintiffs for $354.32, with interest from October 29, 1861; otherwise judgment to be entered for the defendants.
Smithers for the plaintiffs. The question of law involved in the case and to be decided by the court was, whether the official bond of Cranor, as collector of public taxes in Milford hundred for the year 1859, was a lien upon the lands sold from the date of the bond, which was the 5th day of March in that year. Under the provisions of the statute he considered that it was. The fifteenth section of the one hundred and seventeenth chapter of the Revised Statutes of the State, provides that every recognizance or obligation acknowledged for a penal sum with condition for the performance by an officer of the duties of his office, or of any public trust, shall from the caption of such recognizance, or from the time of the acknowledging and approving such obligation, be. a lien upon all the lands and tenements of the officer, being the principal obligor therein, within the county wherein such recognizance or obligation is taken or acknowledged; but the same shall not be a lien upon the lands and tenements of the sureties therein. Rev. Code 418, sec. 15. The bond or obligation referred to in the case before the court, was comprehended in the express terms of the section of the chapter which he had just read. *Page 88 
 Comegys for the defendants. Was the bond a lien from the time of its caption? Caption where and when? For the definition of the term, he referred to Jac. Law Dic. 396. But a collector's bond always has a warrant of attorney annexed to it for the confession of judgment upon it. Why then should the lien of it extend back to the caption, or the acknowledgment of the bond? The original of the provision, as it now stands in our statutes and as just read by the counsel on the other side, from the Revised Code, was to be found in the Digestof 1829, p 455, but that mention recognizances only, and says nothing about obligations or bonds. It was as follows: Every recognizance which shall, after the passing of this act, be acknowledged for a certain sum of money, conditioned for the due performance by any officer of the duties of his office, shall be a lien upon the lands and tenements of such officer to the amount of the sum mentioned in the body of such recognizance from the time of the caption thereof; but neither at that time, nor since, up to the present day, or until this case arose, had it ever been supposed that any thing but an official recognizance in form could have that effect, and, which, by the way, is the general effect which the common law gives and always gave to all recognizances, or acknowledgments of debt taken and entered of record in the courts of England. But it had never before been supposed in this State, that an official bond merely, taken and acknowledged as this was, out of court and with a warrant of attorney annexed to it for the confession of judgment at any moment upon it, could be a lien upon the lands of any one from the date of its execution and acknowledgment, or until judgment was duly entered upon it pursuant to the warrant of attorney. But collector's bonds are not even acknowledged as a general thing, in point of fact, and the sureties do not necessarily appear before the Levy Court when they are taken and accepted by that body. The revisors of the late statutes only intended to incorporate in the present Revised Code the provision in regard to such instruments, as it existed in *Page 89 
the Digest of 1829. It was only bonds of this description which have not warrants of attorney to confess judgment annexed to them, that should be held to be liens on the real estate of the officer from the date or caption of them.
Smithers replied that the bond and the sureties of the State Treasurer are to be approved by the Governor, and the statute requires that his bond shall have a warrant of attorney to confess judgment attached to it; but only collector's and treasurer's bonds have such warrants attached to them, and it was because they are the receivers of money, and it was expedient and necessary that the remedy against them should be speedy and summary.
By the Court. It is a familiar rule in construing an act of the legislature to determine the meaning and design of it, to recur to other and earlier statutes on the same subject. It is plain what is meant by the original act of 1829 in regard to such official obligations. Under it the bonds of collectors, as well as of most of the other officers known to the constitution and the laws of this State, were not liens upon the real estate of such officers from their caption or acknowledgment, and we do not think, the late revisors of the general statutes designed to change it in this respect, by the terms employed in the fifteenth section of the one hundred and seventeenth chapter of the Revised Code 418. The lien of official bonds as thus provided for, is intended to apply to sheriffs and constables, but not to collectors of county taxes. In regard to the latter, the county has ample security against loss by entering judgment on the warrant of attorney accompanying the bond, and which at once becomes a lien on the real estate of the sureties, as well as of the officer himself. We are therefore of the opinion that the official bond in this case, was not a lien from its caption on the lands and tenements in question of Cranor, the collector, and judgment must accordingly be entered for the defendants. *Page 90